1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff(s),

  v.

HUMBERTO VELOZ-MANZO,

        Defendant(s).

_____/

No. C 09-00240 MHP

**MEMORANDUM & ORDER**

**Re: Veloz-Manzo's Motion to Dismiss the Indictment**

      On March 5, 2009, the United States of America ("the government") indicted Humberto Veloz-Manzo ("Veloz-Manzo") on one count of violating 8 U.S.C. section 1326, illegal reentry into the United States after deportation.  Before the court is Veloz-Manzo's motion to dismiss the indictment.  In his motion, Veloz-Manzo collaterally challenges the 2008 removal order that serves as the predicate for his indictment.  Having considered the arguments and submissions for the parties, the court enters the following memorandum and order.

BACKGROUND

      Veloz-Manzo was born in 1980 in Ecuandureo, Michoacan, Mexico.  At some time in 1989 or 1990, Veloz-Manzo was brought to the United States and settled with his mother and siblings in Napa, California.  On September 11, 1995, Veloz-Manzo was granted lawful permanent resident status.

In 1999, Veloz-Manzo pled guilty in the County of Napa, California, to one count of assault by means of force likely to produce great bodily injury pursuant to California Penal Code section 245(a)(1), for which he was sentenced to three years in state prison.  Nine years later, on September 17, 2008, the Department of Homeland Security served Veloz-Manzo with a notice to appear ("NTA") for removal proceedings predicated on his 1999 conviction.  The NTA alleged that Veloz-Manzo was removable because he had been convicted of "assault with a deadly weapon likely to produce great bodily harm in violation of Section 245(a)(1) of the Penal Code of California."  As the government concedes and the record plainly demonstrates, although the NTA correctly alleged that Veloz-Manzo had been convicted under section 245(a)(1), it erroneously alleged that a weapon had been involved in Veloz-Manzo's conviction.  Section 245(a)(1) can be violated by two distinct types of conduct: (1) "[a]ssault . . . with a deadly weapon or instrument other than a firearm . . . ," and (2) "[a]ssault . . . by any means of force likely to produce great bodily injury . . . ."  Cal. Penal Code § 245(a)(1); see People v. Martinez, 125 Cal. App. 4th 1035, 1043 (2005) ("As is readily apparent, the statute describes two different ways of committing a prohibited assault: (1) by use of a deadly weapon or instrument other than a firearm or (2) by means of force likely to produce great bodily injury.").  "Assault with a deadly weapon likely to produce great bodily harm," the conviction the NTA charged Veloz-Manzo with having sustained, is not a crime under the California Penal Code.

The mistaken charge infected the entirety of  Veloz-Manzo's removal proceedings and his immigration file.  The erroneous allegation was reflected in all relevant documents, including the NTA, the record of deportable/inadmissible alien, and the documents authorizing his transfer to the Eloy Detention Facility in Eloy, Arizona.  Most importantly, at Veloz-Manzo's removal hearing, both the Immigration Judge ("IJ") and Veloz-Manzo, who appeared pro se, operated under the mistaken premise that Veloz-Manzo had been convicted of "assault with a deadly weapon likely to produce great bodily harm" as opposed to assault by means of force likely to produce great bodily injury.  The following colloquy, which reflects the error, was pivotal to the proceedings:

IJ:  Sir, are you a citizen or national of the United States?

Veloz-Manzo ("VM"):  No.

2

1  IJ:  Are you a native and citizen of Mexico?

2  VM:  Yes.

3  IJ:  Did you arrive in the United States near San Ysidro, California, in the year 1990?

4  VM:  Yes.

5  IJ:  And at that time were you admitted or paroled after inspection—did you have permission from the United States government?

6  VM:  I did not have permission, no.

7  IJ:  And did you become a lawful permanent resident on September 11, 1995?

8  VM:  Yes.

9
10  IJ:  And then on June 16, 1999, were you convicted in the California Superior Court for the County of Napa for the offense of <u>assault with a deadly weapon likely to produce great bodily harm</u> in violation of section 245(a)(1) of the California Penal Code?

11  VM:  Yes.

12  IJ:  Were you sentenced to a term of imprisonment of three years for that conviction?

13  VM:  Yes.

14
15  IJ:  Sir, do you concede that you've been convicted of an aggravated felony for a crime of violence . . .?

16  VM:  Yes.

17  The IJ then asked the government if it had any documents to substantiate the conviction, to

18  which the Government responded in the negative.  At that time, based only on Veloz-Manzo's

19  admission to having been convicted of an aggravated felony for a crime of violence, the IJ sustained

20  the charges against Veloz Manzo, holding that he was removable because he had been convicted of

21  a "categorical[]" crime of violence.

22  After holding that Veloz-Manzo's conviction rendered him removable, the IJ addressed

23  Veloz-Manzo's right to appeal and eligibility for relief from deportation.

24  IJ:  Well, sir, based on your conviction and, uh, the fact that you have not expressed any fear of returning to Mexico, I have no other alternative but to issue an order of removal to

25  Mexico.  Do you understand that, sir?

26  VM:  Yes.

27  IJ:  Do you want to appeal that decision or do you waive your right to appeal?

28

3

VM:  I waive.  But, your honor, I would like to ask something.  Once I'm in Mexico, could my wife reopen this process again in the future?

IJ:  Well, she—I suggest you talk to an attorney in that regard.  But based on this conviction, it would be very difficult . . . .

Following the removal hearing, a warrant for Veloz-Manzo's removal to Mexico was executed on October 15, 2008.  At some point after that date, Veloz-Manzo reentered the country, and on March 3, 2009, he was arrested for illegally reentering the United States.

LEGAL STANDARD

I.      8 U.S.C. Section 1326 and Collateral Challenges of Removal Orders

To convict an individual under 8 U.S.C. section 1326 for illegal reentry after deportation, the government must prove that (1) the defendant is an alien; (2) the defendant was previously deported from the United States; and (3) the defendant was found in the United States without the consent of the Attorney General.  8 U.S.C. § 1326(a).

Through this motion, Veloz-Manzo collaterally challenges the 2008 removal order that functions as the predicate for his prosecution under 8 U.S.C. section 1326.  Generally, federal district courts lack the power to review removal orders.  See Martinez-Rosas v. Gonzales, 424 F.3d 926, 928-29 (9th Cir. 2005).  Judicial review of a prior removal order is appropriate, however, "in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense."  United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987).  "To succeed in such a collateral attack, the defendant must demonstrate that: (1) he exhausted any administrative remedies available to him to appeal the removal order, (2) the underlying proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair."  United States v. Lopez-Velasquez, 568 F.3d 1139, 1142 (9th Cir. 2009) (citing 8 U.S.C. § 1326(d)).  A waiver of the right to appeal must be "considered and intelligent".  Id.

1    DISCUSSION

2    I.      Fundamental Unfairness

3              Defendant argues that his waiver of appeal was not "considered and intelligent" and the

4    government does not take issue with that assertion.  Since it is undisputed that defendant did not

5    make a knowing waiver, the court proceeds to the third prong of the collateral challenge

6    standard—fundamental unfairness—as it proves dispositive for Veloz-Manzo's claims.  A defendant

7    can establish that his deportation proceeding was fundamentally unfair by showing that "(1) [his]

8    due process rights were violated by defects in his underlying deportation proceeding, and (2) he

9    suffered prejudice as a result of the defects."  Id. (quoting United States v. Ubaldo-Figueroa, 364

10   F.3d 1042, 1048 (9th Cir. 2004)).  As the following discussion will make clear, because the IJ would

11   have reached the exact same result—finding that Veloz-Manzo was removable—if the hearing had

12   been conducted error-free, Veloz-Manzo cannot show that he suffered any prejudice.  His motion

13   must therefore be denied.

14           a.      Prejudice

15           An alien satisfies the prejudice prong of the fundamental unfairness analysis if he can present

16   "plausible scenarios in which the outcome of the proceedings would have been different."  Walters

17   v. Reno, 145 F.3d 1032, 1044 (9th Cir. 1998).        The cornerstone of Veloz-Manzo's motion to

18   dismiss the indictment is his claim that the IJ failed to properly conduct the mandatory procedures

19   for determining if Veloz-Manzo's 1999 conviction rendered him removable.

20           In order to analyze the merits of this claim, it is first necessary to understand the legal

21   framework through which the IJ reached the conclusion that Veloz-Manzo was removable.  The

22   Attorney General possesses the authority to order the removal of aliens within the United States who

23   have been convicted of an aggravated felony.  8 U.S.C. § 227(a)(2)(A)(iii).  One type of an

24   aggravated felony is a "crime of violence," see 8 U.S.C. § 1101(a)(43)(F), which is defined as either

25   "(a) an offense that has as an element the use, attempted use, or threatened use of physical force

26   against the person or property of another, or; (b) any other offense that is a felony and that, by its

27   nature, involves a substantial risk that physical force against the person or property of another may

28

5

1   be used in the course of committing the offense." 18 U.S.C. § 16.  The transcript of Veloz-Manzo's

2   removal proceedings shows that Veloz-Manzo's removability was predicated solely on his having

3   been convicted of a crime of violence.

4          To determine whether an individual has committed a crime of violence, a court must engage

5   in the familiar categorical and modified categorical analysis first established in <u>Taylor v. United</u>

6   <u>States</u>, 495 U.S. 575 (1990).  First, the court looks "to the statute under which the person was

7   convicted and compare[s] its elements to the . . . definition" of a crime of violence provided in 18

8   U.S.C. section 16.  <u>Chang v. INS</u>, 307 F.3d 1185, 1189 (9th Cir. 2002).  "[I]f and only if the 'full

9   range of conduct' covered by [the criminal statute] falls within the meaning of" a crime of violence,

10  no further inquiry is necessary, <u>United States v. Baron-Medina</u>, 187 F.3d 1144, 1146 (9th Cir. 1999);

11  the crime is considered a categorical crime of violence and the defendant is necessarily guilty of

12  having committed an aggravated felony.  If, however, the court finds that "the statute of conviction

13  is not a categorical match because it criminalizes both conduct that does and does not qualify as an

14  aggravated felony, then [the court] proceed[s] to a 'modified categorical approach.' "  <u>Chang</u>, 307

15  F.3d at 1189.  "Under the modified categorical approach, [the court] conduct[s] a limited

16  examination of documents in the record of conviction to determine if there is sufficient evidence to

17  conclude that a defendant was convicted of the elements of the generically defined crime even

18  though his or her statute of conviction was facially overinclusive."  <u>Id.</u>

19         At Veloz-Manzo's hearing, the IJ never conducted either step in the <u>Taylor</u> analysis.  Instead,

20  he relied upon Veloz-Manzo's admission to having been convicted of an "aggravated felony crime

21  of violence" to conclude that Veloz-Manzo was removable.  Veloz-Manzo's admission aside, if the

22  crime for which Veloz-Manzo was actually convicted—assault by means of force likely to produce

23  great bodily harm—was not a categorical crime of violence, Veloz-Manzo would have a compelling

24  claim of prejudice.  In such a circumstance, the IJ would have been required to conduct a limited

25  examination of the record of conviction to determine if Veloz-Manzo had been convicted of a crime

26  of violence.  Given that the government was unable to produce even a single document to

27  substantiate Veloz-Manzo's conviction, it is plausible that the government would have also been

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    unable to establish through a modified categorical approach that Veloz-Manzo had been convicted

2    of a crime of violence.  And if the government could not establish that Veloz-Manzo had been

3    convicted of a crime of violence, the sole grounds for his removability would have been eviscerated.

4         Veloz-Manzo's argument only carries the day, however, if section 245(a)(1)'s proscription of

5    assault by means of force likely to produce great bodily injury brings within its ambit some conduct

6    that falls outside of the meaning of a crime of violence.  A careful analysis by the court indicates that

7    such is not the case.   This court has concluded, based upon the following analysis, that a conviction

8    under section 245(a)(1) for assault by means of force likely to produce great bodily injury is a

9    categorical crime of violence.  At the time of briefing and hearing this was an issue of first

10   impression.  On September 21, 2009, this Circuit held that "assault with a deadly weapon or by

11   means of force likely to produce great bodily injury under section 245(a)(1) is categorically a crime

12   of violence" under the element prong of section 2L1.2 of the United States Sentencing Guidelines.

13   United States v. Grajeda, ___F.3d___,  No. 07-50387,  2009 WL 2988034, at *10 (9th Cir. Sept. 21,

14   2009).   The Ninth Circuit decided this issue within the context of the Sentencing Guidelines.  The

15   issue arises here under the immigration laws and their incorporation of the term "crime of violence"

16   as used in section 16 of Title 18, which "partially overlaps with the Sentencing Guidelines

17   definition".  Id. at *3  n.3.  Thus, the court analyzes section 245(a)(1) in light of section 16, albeit in

18   the comfort of the Ninth Circuit's holding in Grajeda.

19        As discussed above, section 245(a)(1) can be violated through two distinct types of conduct:

20   assault with a deadly weapon other than a firearm and assault by means of force likely to produce

21   great bodily injury.  The Ninth Circuit has already held on at least two occasions that assault with a

22   deadly weapon other than a firearm is a crime of violence.  See Ortiz-Magana v. Mukasey, 542 F.3d

23   653, 655 (9th Cir. 2008) (holding that aiding and abetting an " '[a]ssault with a deadly weapon by

24   force' likely to produce great bodily injury" is a categorical crime of violence) (emphasis added);

25   Ocampo-Duran v. Ashcroft, 254 F.3d 1133, 1134 (9th Cir. 2001) (same).  Despite the government's

26   protestations to the contrary, neither the Ninth Circuit nor any district court has yet answered

27

28

**United States District Court**

For the Northern District of California

1   whether the other half of section 245(a)(1), the half under which Veloz-Manzo was convicted, is

2   also a categorical crime of violence.

3            Under California law, to secure a conviction under the "great bodily injury" provision of

4   section 245(a)(1), the state must prove the following elements: (1) "a person was assaulted"; and (2)

5   "[t]he assault was committed by means of force likely to produce great bodily injury."  Cal. Jury

6   Inst. Crim. § 9.02 (Spring 2009).  An assault is defined as "an unlawful attempt, coupled with a

7   present ability, to commit a violent injury on the person of another."  Cal. Penal Code § 240.  "Great

8   bodily injury 'means a significant or substantial physical injury.' "  People v. Cross, 45 Cal. 4th 58,

9   63 (2008) (quoting Cal. Penal Code § 12022.7).   Combining these elements, to be convicted under

10  the "great bodily injury" prong of section 245(a)(1), an individual must attempt to use force, likely

11  to produce significant or substantial physical injury, to commit a violent injury on the person of

12  another.  Clearly, "the 'full range of conduct' covered by [the great bodily injury prong] falls within

13  the meaning of" a crime of violence because it "has as an element the use, attempted use, or

14  threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).  One

15  cannot be convicted under the great bodily injury prong of section 245(a)(1) unless he or she uses or

16  attempts to use force to commit a violent injury on the person of another.

17           Veloz-Manzo argues that the California Supreme Court's decision in People v. Tallman, 27

18  Cal. 2d 209 (1945), supports the "counterintuitive" notion that " 'the use, attempted use, or

19  threatened use of physical force against the person or property of another,' 18 U.S.C. § 16(a), is not

20  'an element' of Cal. Penal Code § 245(a)(1), assault by means of force."  Docket No. 18 (Veloz-

21  Manzo's Reply) at 5.  Tallman reaches nowhere near as far as Veloz-Manzo suggests.  Tallman was

22  convicted of two lesser included counts of simple assault related to two separate incidents where he

23  grabbed young girls on their way to school.  Id. at 211.  On both occasions, Tallman "placed one of

24  his hands under [the girl's] skirt and his other hand was upon her body outside of her clothes."  Id.

25  Initially, Tallman was charged with two counts of assault with intent to commit rape.  Id.  At his

26  preliminary hearing, the State introduced evidence that when Tallman grabbed the victims, he

27  "moved his hands in a clawing manner over their bodies."  Id. at 212.  After the preliminary hearing,

28

8

United States District Court

For the Northern District of California

the State moved to amend the information to include, among other charges, two counts of assault by means of force likely to produce great bodily injury under section 245(a)(1). Id. On appeal, Tallman asserted that the evidence at the preliminary examination was not sufficient to support the "great bodily injury" counts. In rejecting his claim, the California Supreme Court held that the evidence and testimony related to Tallman's "clawing" of the girls provided evidence of force justifying the information's amendment. Id. Although Tallman makes clear that "the offense of assault with force likely to produce great bodily injury may be perpetrated by means of the hands alone," id. at 212, it makes equally clear that the crime can only be committed when force, such as clawing, is present. Tallman most certainly does not stand for the proposition that an individual can be convicted under section 245(a)(1) without evidence of the application of force.

The court thus holds that assault by means of force likely to produce great bodily injury is categorically a crime of violence. Accordingly, Veloz-Manzo was not prejudiced by the errors at his removal proceedings. Prejudice requires a showing that absent defects, it is plausible that the outcome of the proceedings would have been different. Here, even if Veloz-Manzo's proceedings had been conducted immaculately and in the manner that Veloz-Manzo suggests—the NTA alleged the proper prior conviction, Veloz-Manzo admitted to that charge, and the IJ required the government to produce a record of that conviction—the IJ would have reached the identical conclusion: Veloz-Manzo was removable because he had been convicted of a crime of violence. No other result was possible, let alone plausible. Accordingly, Veloz-Manzo's motion to dismiss the indictment is DENIED.

      b.    <u>Due Process Violations</u>

That the court has denied Veloz-Manzo's motion should not put the government at ease. Although Veloz-Manzo was not prejudiced by the serious errors in his proceedings, the nature of the errors is shocking and emblematic of the lack of protections provided to self-represented aliens in removal proceedings. What transpired at Veloz-Manzo's removal proceedings cannot be overstated: The IJ found that Veloz-Manzo, an individual who had been living in the United States for twenty years and who was recently married and expecting a child, was removable based on Veloz-Manzo's

9

uncounseled admission to having been convicted of a crime that does not exist under California law and for which he quite obviously had never suffered a conviction.  In so doing, the government may have conformed with the letter of the law.[1]  Nonetheless, the procedures afforded to Veloz-Manzo plainly violated the spirit of the constitutional provisions designed to protect his rights.  "[W]hen an alien appears pro se in removal proceedings, the IJ has an increased responsibility to protect the constitutional rights of the alien."  Agyeman v. INS, 296 F.3d 871, 877 (9th Cir. 2002).  This responsibility emanates from the overwhelming complexity of immigration law and from the serious rights that are at stake in removal proceedings.  See id.  ("[A]liens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and . . . their failure to do so successfully might result in their expulsion from this country"); Biwot v. Gonzales, 403 F.3d 1094, 1098 (9th Cir. 2005) ("The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate.").  What makes the underlying proceedings in this case particularly troubling is the ease with which all of the errors could have been remedied had the government simply provided the IJ with a judicially noticeable document to establish Veloz-Manzo's prior conviction.  The government ought not elect to exercise its power to deport lawful residents without having, at the ready, the documents necessary to support its prosecutorial discretion.  The government may not be compelled by law to produce any judicially noticeable document of conviction where a pro se alien admits to a conviction for a crime of violence.  Regardless, it would behoove the government to do so to ensure that only those who are truly removable are deported from the country.

Because the court needs not do so in this case, it does not hold that the failure of the government to produce such a document or any other of the errors that permeated the removal proceedings violated Veloz-Manzo's due process rights.  If, however, the court were presented with similar government conduct in which an alien was able to demonstrate prejudice, the court likely will not hesitate to find that, under the totality of the circumstances, the alien's due process rights were violated.

1    CONCLUSION

2        For the preceding reasons, Veloz-Manzo's motion to dismiss the indictment is DENIED.

3    The United States Attorney or the Assistant United States Attorney appearing in this case is directed

4    to serve a copy of this order upon 1) the Office of Chief Immigration Judge for distribution to all

5    Immigration Judges and 2) the Principal Legal Advisor of the United States Immigration and

6    Customs Enforcement ("ICE") for distribution to all ICE attorneys within twenty (20) days of the

7    date of this order.

8

9        IT IS SO ORDERED

10

11

12   Dated: October 2, 2009                                    _____

                                                               MARILYN HALL PATEL
13                                                             United States District Court Judge
                                                               Northern District of California

**United States District Court**
For the Northern District of California

11

**ENDNOTES**

1.  Contrary to Veloz-Manzo's contention, the IJ acted within his discretion to conclude that Veloz-Manzo was removable based solely on Veloz-Manzo's admissions.  In removal proceedings, the burden is on the government to establish by "clear and convincing evidence" that an alien is subject to deportation.  8 U.S.C. § 1229a(c)(3)(A).  The federal regulations governing removal proceedings explicitly provide that an alien's admission to the charges in the NTA can function as clear and convincing evidence of the alien's removability:

> The immigration judge shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein. If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent. . . .

8 C.F.R. § 1240.10.  An open question may remain as to whether an objectively erroneous admission made by a self-represented alien should be entitled to equal weight.  Cf. Hoodho v. Holder, 558 F.3d 184, 191 (2d Cir. 2009) (holding in case where alien was represented by counsel, that "an IJ does not err by accepting an alien's concession of removability when that concession is not plainly contradicted by record evidence"); Roman v. Mukasey, 553 F.3d 184, 187 (2d Cir. 2009) (declining to hold that "an alien's admissions cannot constitute clear and convincing evidence of removability in a case in which removability is premised on a prior conviction" in part because the alien did not "allege that the admissions [he made] were inaccurate or that the lawyer representing him before the IJ was ineffective.").  The court need not reach that question because of its holding that Veloz-Manzo did not suffer any prejudice at his removal hearing.

Nor is Veloz-Manzo correct that the government was required to produce some documentary record of Veloz-Manzo's prior conviction in order to satisfy its burden of proof.  Veloz-Manzo suggests that section 240(c)(3)(B) of the Immigration and Naturalization Act ("INA"), which lists seven types of documents that "shall constitute proof of a prior conviction," requires the government to introduce such documents in order to sustain its burden of proof regarding a prior conviction.  8 U.S.C. § 1229a(c)(3)(B); see also 8 C.F.R. 1003.41(a).  Veloz-Manzo misapprehends the purpose of Section 240(c)(3)(B).  Section 240(c)(3)(B) is only relevant in circumstances where the alien disputes an allegation that he or she was convicted of a particular crime.  In such cases, section 240(c)(3)(B) establishes that the introduction of one of the listed documents functions as "clear and convincing" evidence of a prior conviction, meaning the government has carried its burden of proof on that issue. If the alien admits to a prior conviction, however, the government is absolved of the burden of proving that the alien has sustained a prior conviction.  After such an admission, further proceedings are only required if the conviction to which the alien admits is noncategorical.  For reasons discussed above, such inquiry was not necessary in the instant case because a conviction under section 245(a)(1), like Veloz-Manzo's, is a categorical crime of violence.

12